**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| WENDY JENKINS and RICHARD JENKINS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) **JURY TRIAL DEMANDED** |
| BJC HEALTHCARE d/b/a CHRISTIAN HOSPITAL, CHRISTIAN HOSPITAL ORTHOPEDICS & SPINE SURGEONS, NORTH COUNTY GENERAL SURGERY, WASHINGTON UNIVERSITY PHYSICIANS, BJC MEDICAL GROUP OF MISSOURI, INPATIENT CONSULTANTS OF MISSOURI, INC., JACQUES VAN RYN, M.D., MARIANO FLORO JR., M.D., ALFREDO CUSTODIO, M.D., PAOLO MASETTI, M.D. | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**PETITION**

COME NOW plaintiffs, Wendy Jenkins and Richard Jenkins, by and through counsel, and for their cause of action against the defendants, Christian Hospital, BJC Medical Group of Missouri, Christian Hospital Orthopedics and Spine Surgeons, Inpatient Consultants of Missouri, Inc., Physician Group, LC, Jacques Van Ryn, M.D., Mariano Floro Jr., M.D., Alfredo Custodio, M.D. and Paolo Masetti, M.D., and hereby state and allege as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

**JURISDICTION AND VENUE**

1. At the time of the acts complained of herein and at all times mentioned, plaintiff Wendy Jenkins has been an individual over the age of twenty-one years, residing in Madison County, Illinois.  She is a citizen of the State of Illinois.

2. This court has jurisdiction over this litigation in accordance with 28 USC 1332(a)(1) in that plaintiff and each defendant are citizens of different states and the amount in controversy is greater than Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs.

3. That wrongful acts discussed herein occurred in St. Louis County, Missouri and therefore the District Court for the Eastern District of Missouri is an appropriate venue in accordance with 28 USC 1391(b)(2).

4. At the time of the negligent acts complained of herein and at all times mentioned, plaintiff, Wendy Jenkins, was a patient at Christian Hospital and under the direct care of Christian Hospital Orthopedics and Spine Surgeons, BJC Medical Group of Missouri, Inpatient Consultants of Missouri, Inc., Physician Group, LC, Jacques Van Ryn, M.D., Mariano Floro Jr., M.D., Alfredo Custodio, M.D., Paolo Masetti, M.D. and Nicholas Taraska, M.D., and the nurses, staff, employees and agents of the foregoing.

5. Richard Jenkins is the husband of Wendy Jenkins and also a resident and citizen of the State of Illinois.

**CHRISTIAN HOSPITAL**

6. At the time of the negligent acts complained of herein and at all times mentioned, defendant Christian Hospital (hereinafter occasionally also referred to as "CH") has been a Missouri Corporation owning, operating and holding itself out to the public, and in particular to Wendy Jenkins, as a facility specializing in providing hospital, nursing, surgical and acute care services, to patients like Wendy Jenkins.

7.     At the time of the negligent acts complained of herein and at all times mentioned, CH was acting by and through its servants, employees and/or agents, actual or ostensible.

8.     At all times hereinafter mentioned, members of the medical and nursing staff that participated in the care and treatment of Wendy Jenkins at Defendant Christian Hospital were employed by said hospital and acting as duly authorized agents, servants, and representatives of CH and all acting within the scope and course of their respective employment.

**CHRISTIAN HOSPITAL ORTHOPEDICS AND SPINE SURGEONS**

9.     At the time of the negligent acts complained of herein and at all times mentioned, defendant Christian Hospital Orthopedics and Spine Surgeons (hereinafter occasionally also referred to as "CH Orthopedics") has been a Missouri Corporation owning and operating and holding itself out to the public, and in particular to Wendy Jenkins, as a facility specializing in providing orthopedic, surgical and acute care services, to patients like Wendy Jenkins.

10.    At the time of the negligent acts complained of herein and at all times mentioned, CH Orthopedics was acting by and through its servants, employees and/or agents, actual or ostensible, including Dr. Jacques Van Ryn.

11.    At all times hereinafter mentioned, members of the medical staff that participated in the care and treatment of Wendy Jenkins while at Christian Hospital were employed by said orthopedic group and acting as duly authorized agents, servants, and representatives of CH Orthopedics and all were acting within the scope and course of their respective employment.

### NORTH COUNTY GENERAL SURGERY

12. Defendant, North County General Surgery, is a Missouri corporation employing Dr. Mariano Floro, among others, to provide general and vascular surgery to patients, including those at Christian Hospital. This defendant, acting through employees and agents, real and ostensible, did provide patient care to plaintiff on the dates of her hospitalization as alleged herein, including vascular surgery care.

### INPATIENT CONSULTANTS OF MISSOURI, INC.

13. Defendant, Inpatient Consultants of Missouri, Inc., is a Missouri corporation providing staff and employees to care for patients admitted to Christian Hospital, and so employed Dr. Paolo Masetti. This defendant, acting through employees and agents, real and ostensible, did provide negligent patient care to plaintiff on the dates of her hospitalization as alleged herein.

### WASHINGTON UNIVERSITY PHYSICIANS

14. Defendant, Washington University Physicians, is a Missouri corporation providing staff and employees to care for patients admitted to Christian Hospital, and also employed Dr. Paolo Masetti. This defendant, acting through employees and agents, real and ostensible, did provide negligent patient care to plaintiff on the dates of her hospitalization as alleged herein.

### JACQUES VAN RYN, M.D.

15. At the time of the negligent acts complained of herein and at all times mentioned, defendant Jacques Van Ryn, M.D. ("Van Ryn") has been a licensed physician, holding himself out to the public, and in particular to plaintiff Wendy Jenkins, as a physician specializing in orthopedic treatment, including knee replacement surgery

and related health care services.  He is and was an agent and/or employee of CH Orthopedics and Spine Surgeons, CH Hospital and/or BJC Medical Group of Missouri.

16. At the time of the negligent acts complained of herein and at all times mentioned, defendant Van Ryn was acting individually and/or within the course and scope of his employment and/or agency with CH Hospital, CH Orthopedics and BJC Medical Group of Missouri.

### MARIANO FLORO JR., M.D.

17. At the time of the negligent acts complained of herein and at all times mentioned, defendant Mariano Floro Jr., M.D. ("Floro") has been a licensed physician and surgeon, holding himself out to the public, and in particular to plaintiff Wendy Jenkins, as a physician specializing in general and vascular care, including vascular surgical and acute care services to patients like Wendy Jenkins.

18. At the time of the negligent acts complained of herein and at all times mentioned, defendant Floro was acting individually and/or within the course and scope of her employment and/or agency with Christian Hospital, North County General Surgery and BJC Medical Group of Missouri.

### ALFREDO CUSTODIO, M.D.

19. At the time of the negligent acts complained of herein and at all times mentioned, defendant Alfredo Custodio, M.D. ("Custodio") has been a licensed physician and surgeon, holding himself out to the public, as a physician specializing in general surgical services, including being knowledgeable of the vascular surgery and acute care services required by plaintiff at the dates and times herein.

20. At the time of the negligent acts complained of herein and at all times mentioned, defendant Custodio was acting individually and/or within the course and

scope of his employment and/or agency with Christian Hospital, North County General Surgery and BJC Medical Group of Missouri.

## PAOLO MASETTI, M.D.

21. At the time of the negligent acts complained of herein and at all times mentioned, Paolo Masetti, M.D. ("Masetti") has been a licensed physician, holding himself as a critical care intensivist.

22. At all times mentioned herein, Dr. Masetti was employed by Inpatient Consultants of Missouri, Inc. and Washington University Physicians and acting as an agent, real or ostensible, of Christian Hospital, North County Orthopedics and Spine Surgeons, North County General Surgery and/or BJC Medical Group of Missouri.  This defendant did provide patient services to plaintiff on the dates of her hospitalization as alleged herein.

## BJC MEDICAL GROUP OF MISSOURI

23. At the time of the negligent acts complained of herein and at all times mentioned, defendant BJC Medical Group of Missouri held itself out to the public, and in particular, to Wendy Jenkins as a provider of physician, nursing, medical, hospitalist acute care and surgical services to patients like Wendy Jenkins.

24. At the time of the negligent acts complained of herein and at all times mentioned, BJC Medical Group, were acting by and through its servants, employees and/or agents, actual or ostensible.

25. At all times hereinafter mentioned, many of the members of the medical professionals that participated in the care and treatment of Wendy Jenkins by Defendant BJC Medical Group were employed by BJC Medical Group of Missouri and acting as duly authorized agents, servants, and representatives of said Defendant BJC

Medical Group, North County Orthopedics and Spine Surgeons, North County General Surgery and Christian Hospital.

## FACTS OF THE OCCURRENCES

26. On September 26, 2019 plaintiff underwent a left total knee replacement (arthroplasty) performed by Dr. Van Ryn.  On October 2, 2019 plaintiff returned to the Christian Hospital emergency department with suspected wound infection. Briefly hospitalized, she was provided prophylactic antibiotics and discharged with home healthcare.

27. On October 10, 2019, after examining plaintiff in his office during a post-operative visit, Dr. Van Ryn admitted the plaintiff to Christian Hospital to address a suspected periprosthetic infection to rule out deep vein thrombosis.

28. Wendy Jenkins was scheduled by Dr. Van Ryn for a left knee arthrotomy with wound debridement and polyethylene exchange to be performed on October 11, 2019.  During this procedure plaintiff's popliteal vein, artery and nerve were transected by Dr. Van Ryn resulting in large volume blood loss and a vascular injury to the left lower extremity.

29. Immediately after discovering the iatrogenic injury, Dr. Van Ryn sought an emergency vascular consult.  Dr. Mariano Floro Jr., a vascular surgeon, and Dr. Alfredo Custodio, a general surgeon, joined Van Ryn in the surgical arena in an effort to repair the damage and specifically to revascularize the lower left extremity.

30. On October 11, 2019, Dr. Floro, with the assistance of others, performed a short segment anastomosis of the popliteal artery and vein with artificial graft and de-compartmentalization of the lower left leg.  Floro was assisted by Alfredo Custodio, M.D. and others yet unknown.

31. The attempted repair surgery was completed at approximately 3:30 p.m. on October 11, 2019. Notwithstanding, at no time did plaintiff's pulse or viable blood flow return to the lower extremity.

32. Post-surgically, including throughout the remainder of the day and night of October 11, 209 and into the morning of October 12, 2019, Wendy Jenkins was in the care of the staff of Christian Hospital, BJC Medical Group, Christian Hospital Orthopedics and Spine Surgeons, Inpatient Consultants of Missouri, Inc., Washington University Physicians and Dr. Paolo Masetti. At all times, plaintiff's health also remained the responsibility of Drs. Van Ryn, Floro and Custodio.

33. Post-operatively plaintiff was transferred to the CH surgical ICU for recovery and observation. During that time each of the defendants knew or should have known that plaintiff's left leg remained pulseless, was losing sensory and motor function, was becoming mottled and cool to the touch.

34. At no time did CH have at its premises the staff, agents or employees with the skill or expertise to tend to plaintiff's deteriorating condition and return her leg to viability.

35. While in the surgical ICU in the afternoon and evening of October 11, 2019 and through to the morning of October 12, 2019, the staff, nurses and doctors failed to properly and sufficiently monitor the plaintiff's leg, failed to recognize the lack of blood flow to this extremity, failed to record and transmit urgent and necessary findings and failed to create and abide by a plan to care for plaintiff's health in a reasonable and prudent manner.

36. In the morning of October 12, 2019, the worsening condition of plaintiff's leg was addressed by a nurse employed at CH by arranging her transfer to Barnes-Jewish Hospital ("BJH") for urgent thrombectomy.

37. On October 12, 2019, shortly after arrival at BJH and after examination and consultation by that hospital's vascular team, it was determined plaintiff's left leg was not salvageable and necessitated amputation. Upon arrival at Barnes Jewish Hospital plaintiff's leg was found to be absent of motor and sensory function, cold and discolored. Plaintiff's left leg was removed on October 12, 2019 at BJH.

38. The plaintiff would not have lost her left leg but for the negligence of the defendants. The negligence of the defendants, more fully set forth below, directly caused or directly contributed to cause the conditions resulting in the amputation of Wendy Jenkin's left leg and damages resulting therefrom.

39. Upon discharge from Barnes Jewish Hospital, plaintiff became a patient of The Rehabilitation Institute of St. Louis. She completed in-patient rehabilitation and was later fitted with an above-the-knee prosthetic.

40. That each of the defendants herein owed to plaintiff a duty to act as a reasonably careful practitioner in their field of expertise.

41. As discussed below, the defendant's, individually and collectively, deviated from the standard of care owed to plaintiff and otherwise failed to act as reasonably careful practitioners.

## COUNT I
## CHRISTIAN HOSPITAL

42. On and after October 11, 2019 and thereafter, failed to properly monitor the post-operative vascular condition of Wendy Jenkins and prescribe treatments and medications necessary to preserve the plaintiff's left leg.

43. On or after October 11, 2019 and thereafter, acting through its employees and agents, failed to transfer plaintiff to an outside hospital equipped with a surgeon that could re-vascularize plaintiff's leg.

44. On or about October 11, 2019 and thereafter, failed to record and communicate to doctors, surgeons and supervisor's information regarding the symptoms that evidenced the declining viability of Wendy Jenkins' left leg so it could be acted upon promptly.

45. On or about October 11, 2019 and thereafter, by and through its servants, agents and employees, failed to promptly and reasonably notify those physicians involved in plaintiff's care that a pulse had failed to return to the lower left leg and therefore the leg lacked adequate blood flow, neurological function and overall viability.

46. Failed to have on-call or otherwise available a vascular team to accept the care of plaintiff and reverse her declining vascular health.

47. Failed to perform the diagnostic tests necessary to diagnose that the popliteal artery contained a clot or obstruction preventing adequate blood flow to the lower left extremity.

48. Failed to promptly and reasonably initiate or follow protocols for thrombolytic therapy or other nonsurgical means to restore blood flow.

49. Failed to create and carry out a care and treatment plan to keep plaintiff's leg viable.

50. Failed to act as a reasonable careful hospital entrusted with the care of plaintiff.

51. Failed to notify plaintiff and/or her spouse that her left leg lacked neurological function, adequate blood flow and was rapidly deteriorating, so that she could make informed decisions relative to her healthcare.

52. That CH's conduct, set forth in paragraphs forty-one (41) through fifty (50) deviated from minimally accepted standards of care for a health care facility.

## COUNT II
## JACQUES VAN RYN, M.D.

53. On October 11, 2019, failed to properly evaluate, plan and perform arthrotomy and wound debridement on the left knee of plaintiff Wendy Jenkins.

54. On October 11, 2019, failed to properly identify and protect the popliteal artery, vein and nerve in the plaintiff's left leg during the left knee arthrotomy with wound debridement and polyethylene exchange.

55. Failed to identify the plaintiff's vascular and neurological anatomy prior to severing the popliteal artery, popliteal vein and popliteal nerve in her left leg.

56. On October 11, 2019, negligently and unknowingly transected the popliteal artery, popliteal vein and popliteal nerve of Wendy Jenkins.

57. On and after October 11, 2019, individually and by and through his servants, agents, designees and employees, failed to authorize and perfect transfer of plaintiff to BJH or other suitable healthcare facility for vascular repair during the post-surgical period when the left leg was still viable and amenable to revascularization.

58. Failed to act when the anastomosis performed by Drs. Floro and Custodio failed to reinstate a discernable pulse in the lower left leg.

59. Failed to perform or order necessary tests to ascertain the existence of a clot or blockage interrupting blood flow to the plaintiff's lower left leg.

60. Failed to inform plaintiff or her family that a pulse had not returned to the left leg and that those individuals available at Christian Hospital were incapable of revascularizing plaintiff's leg.

61. On and after October 11, 2019, failed to communicate with the nurses and staff of CH, Christian Hospital Orthopedics and Spine Surgeons, BJC Medical Group, Inpatient Consultants of Missouri, Inc., Washington University Physicians, Physician Group, LC, Drs. Masetti, Floro and Custodio and otherwise monitor plaintiff's vascular condition post surgically and overnight to realize that a pulse had not returned to plaintiff's lower extremity and that urgent care was mandated.

62. Failed to provide suitable standing orders or prescribed care plan to be followed in his absence and also take adequate steps to enforce each.

63. That Jacques Van Ryn, M.D.'s conduct set forth in paragraphs fifty-two (52) though sixty-one (61) set forth above deviated from minimally accepted standards of care for a health care provider practicing orthopedic medicine.

## COUNT III
## MARIANO FLORO JR., M.D.

64. On October 11, 2019, failed to properly surgically revascularize plaintiff's left lower extremity.

65. Failed to recognize the arterial graft used for the anastomosis failed and was allowing only inadequate blood flow to the left lower extremity.

66. On October 11, 2019 and thereafter, failed to utilize angiogram or other diagnostic tool to evaluate blood flow in the lower extremity and thereby ascertaining plaintiff's leg required further and immediate intervention.

67. On October 11, 2019, and after failed to seek or recommend transfer to BJH or other suitable healthcare facility for further vascular evaluation and treatment.

68. Failed to order, prescribe and administer thrombolytic therapy or other clot busting intervention.

69. On October 11, 2019 and thereafter, failed to monitor the plaintiff's post-surgical condition, including requesting and receiving frequent nursing and physician updates of the plaintiff's status.

70. On October 11, 2019 and thereafter, failed to communicate with other physicians, including Drs. Masetti, Custodio and Van Ryn, as well as the staff at Inpatient Consultants of Missouri, Inc., Washington University Physicians, Physicians Group, LC, CH, Christian Hospital Orthopedics and Spine Surgeons and BJC Medical Group after he left the operating arena.

71. Failed to inform plaintiff or her family of the ongoing vascular compromise in the lower extremity so that they could make informed decisions about her healthcare.

72. That Mariano Floro Jr., M.D.'s conduct set forth in paragraphs sixty-three (63) through seventy (70) set forth above deviated from minimally accepted standards of care for a surgeon performing general and/or vascular surgery.

## COUNT IV
## ALFREDO CUSTODIO, M.D.

73. On October 11, 2019, failed to properly surgically revascularize plaintiff's left lower extremity.

74. Failed to recognize the arterial graft used for the anastomosis failed and was allowing only inadequate blood flow to the left lower extremity.

75. On October 11, 2019 and thereafter, failed to utilize angiogram or other diagnostic tool to evaluate blood flow in the patient's vascular system in the lower extremity and thereby ascertaining plaintiff's leg required further and immediate intervention.

76. On October 11, 2019, and after failed to seek or recommend transfer to BJH or other suitable healthcare facility for further vascular evaluation and treatment.

77. Failed to order, prescribe and administer thrombolytic therapy or other clot busting intervention.

78. On October 11, 2019 and thereafter, failed to monitor the plaintiff's post-surgical condition, including requesting and receiving frequent nursing and physician updates of the plaintiff's status.

79. On October 11, 2019 and thereafter, failed to communicate with other physicians, including Drs. Masetti, Custodio and Van Ryn as well as the staff at CH, Christian Hospital Orthopedics and Spine Surgeons and BJC Medical Group after he left the operating arena.

80. Failed to inform plaintiff or her family of the ongoing vascular compromise in the lower extremity so that they could make informed decisions about her healthcare.

81. That Alfredo Custodio, M.D.'s conduct set forth in paragraphs seventy-two (72) through seventy-nine (79) set forth above deviated from minimally accepted standards of care for a surgeon performing general and/or vascular surgery.

### COUNT V
### PAOLO MASETTI, M.D.

82. On October 11, 2019 and thereafter, failed to monitor plaintiff's left lower extremity for diminished pulse and viability.

83. On October 11, 2019 and thereafter, failed to communicate his finding to other staff, including BJC Medical Group, North County Orthopedics and Spine Surgeons, Christian Hospital, Inpatient Consultants of Missouri, Drs. Van Ryn, Custodio and Floro.

84. On October 11, 2019 or thereafter, failed to perform basic diagnostic testing and report results to Drs. Van Ryn, Taraska, Custodio and Floro or other professionals employed by the defendants.

85. On October 11, 2019 or thereafter, failed to recommend or initiate transfer to BJH or other suitable healthcare facility for further vascular evaluation and treatment.

86. On October 11, 2019 or thereafter, failed to monitor the plaintiff's post-surgical condition, including receiving and seeking frequent nursing updates.

87. Failed to promptly initiate and follow appropriate thrombolytic therapy.

88. Failed to create and follow through with a plan of care designed to maintain the health of plaintiff's left leg.

89. Failed to communicate with other physicians, including Drs Van Ryn, Floro and Custodio and the staff or agents at CH to arrange a higher level of care than was then available to meet plaintiff's needs.

90. Failed to inform plaintiff or her family of the dire state of her vascular compromise in the lower extremity so that an informed decision could be made.

91. That Paolo Masetti, M.D.'s conduct set forth in paragraphs eighty-one (81) through eighty-nine (89) set forth above deviated from minimally accepted standards of care for an acute care health provider.

## INJURIES

92. The negligence and carelessness of the defendants, individually and collectively, as more fully set forth in this petition, directly and proximately caused, or directly and proximately contributed to cause, plaintiff to suffer the following severe, permanent and progressive injuries:

    a) plaintiff developed vascular and neurological damage to her left leg; and

      b)    plaintiff's left leg was amputated above the knee; and

      c)    plaintiff experienced great pain, permanent disability, loss of normal life and mental anguish.

      d)    plaintiff became more susceptible to other systemic ailments and conditions and experienced health maladies directly attributable to the amputation of her left leg and the recovery therefrom.

93. As a direct and proximate result of the negligence and carelessness of the defendants, plaintiff was forced to expend sums of money for medical care and treatment, for which plaintiff is entitled to recover, all in an amount that plaintiff is unable to state with exactitude at this time. Plaintiff will continue to incur medical and rehabilitation expenses and throughout her lifetime due to the negligence of the defendants.

94. As a direct and proximate result of the negligence and carelessness of the defendants, plaintiff, Wendy Jenkins, was forced to expend monies for environmental modifications of her motor vehicle and residence to make them accessible, and for such other expenses in an amount that at this time plaintiff, Wendy Jenkins, is unable to state with exactitude.  These types of expenses will continue into the future.

95. As a direct and proximate result of the negligence and carelessness of the defendants, plaintiff, Wendy Jenkins, has been forever disabled and disfigured.

96. As a direct and proximate result of the negligence and carelessness of the defendants, plaintiff, Wendy Jenkins, has suffered great mental and physical pain and anguish, in an amount that plaintiff is unable to state with exactitude at this time.

WHEREFORE, plaintiff, Wendy Jenkins, by and through counsel, prays judgment against defendants Christian Northeast Hospital, Christian Hospital Orthopedics and Spine Surgeons, North County General Surgery, Washington University Physicians,

BJC Medical Group of Missouri, Inpatient Consultants of Missouri, Inc., Jacques Van Ryn, M.D., Mariano Floro Jr., M.D., Alfredo Custodio, M.D. and Paolo Masetti, M.D., jointly and severally, for such sums as are fair and reasonable, together with any and all costs herein incurred and expended, and for such other and further relief as this Court may deem just and proper.

## COUNT VI
## RICHARD JENKINS

97.     Plaintiff, Richard Jenkins, hereby realleges and incorporates herein by reference paragraphs one (1) through ninety-five (95) as fully set forth herein.

98.     Each of the acts and omissions set forth above, by the defendants named herein, singularly or in combination with others, caused the harm to plaintiff's spouse, Wendy Jenkins, all as described above.  As a direct and proximate result of the physical and emotional harm caused to his spouse, plaintiff, Richard Jenkins has lost the services, society, support, consortium and companionship of his wife.

WHEREFORE, plaintiff, Richard Jenkins, by and through counsel, prays judgment against defendants Christian Northeast Hospital, Christian Hospital Orthopedics and Spine Surgeons, Washington University Physicians, North County General Surgery, BJC Medical Group of Missouri, Inpatient Consultants of Missouri, Inc., Jacques Van Ryn, M.D., Mariano Floro Jr., M.D., Alfredo Custodio, M.D. and Paolo Masetti, M.D., jointly and severally, for such sums as are fair and reasonable, together with any and all costs herein incurred and expended, and for such other and further relief as this Court may deem just and proper.

## COUNT VII
## (CONSTITUTIONAL CHALLENGE)

COME NOW Plaintiffs, by and through counsel, and raise the below constitutional issues at the earliest opportunity as required by Missouri law, as follows:

99. In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S.Mo. §§ 538.205, 538,210, 538.215 violate the guarantee of equal protection set forth in Art. I, § 2 of the Missouri Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so.

100. In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S.Mo. §§ 538.205, 538,210, 538.215 violate the guarantee of open courts and certain remedies set forth in Art. 1§ 14 of the Missouri Constitution by denying medical negligence plaintiffs free and open access to Missouri's courts of justice and a certain remedy afforded for every injury.

101. In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S.Mo. §§ 538.205, 538,210, 538.215 violate Art. I, § 10 of the Missouri Constitution by depriving medical negligence plaintiffs of due process of law without a rational basis that furthers a legitimate state interest.

102. In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S.Mo. §§ 538.205, 538,210, 538.215 violate the right to trial by jury set for in Art. I, 22(a) of the Missouri Constitution.

102. In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S.Mo. §§ 538.205, 538,210, 538.215 violate the guarantee of equal protection in the United States Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so.

103. In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S.Mo. §§ 538.205, 538,210, 538.215 violate the guarantee of due process of law set forth in Art. I, § 2 of the United States Constitution without a rational basis that furthers a legitimate interest.

104. In liming the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S.Mo. §§ 538.205, 538,210, 538.215 violate the right to trial by jury set forth in the Seventh Amendment to the federal Constitution.

105. In limiting the amount of non-economic damages that a plaintiff may recover in a medical negligence case R.S.Mo. §§ 538.205, 538,210, 538.215 violate the right of substantive due process inasmuch as the legislature is substituting its judgment regarding the amount of compensation due to a plaintiff without any consideration of (1) the nature of the injury; (2) the severity of the injury; (3) the wrongfulness of the defendant's conduct; or (4) the impact of the injury on the plaintiff's ability to enjoy life and liberty; and by so doing the above statutory cites deny the medical malpractice plaintiff a recognizable liberty interest by infringing on the constitutionally guaranteed right to have damages determine by a jury with respect to the award of non-economic damages.

Wherefore, plaintiff, Wendy Jenkins, prays this court refrain from applying the aforementioned statutes to any damage award entered herein; and such other relief this court deems just.

Respectfully submitted,

By: /s/ Lanny Darr
Lanny Darr  (#42038)
Darr Law Offices, Ltd.
307 Henry Street, Suite 406
Alton, IL  62002

Phone:  (618)208-6828  
Fax:  (618)433-8519  
darr@darrfirm.com

Case: 4:20-cv-01415-SRC   Doc. #:  1   Filed: 10/02/20   Page: 20 of 20 PageID #: 20